No. 43,077

Mack-Welling Lumber and Supply Company, Inc., a Corporation, *Appellant,* v. W. H. Bedore and Georgine Bedore, His Wife; W. H. Bedore and Raymond Bedore, a Partnership, d. b. a. Bedore Bros.; The Hays Building and Loan Association, Ellis County, Kansas, a Corporation; Curtis Armbrister and Karen Armbrister, Husband and Wife, *Appellees.*

(379 P. 2d 545)

Opinion filed March 2, 1963.

*Richard M. Driscoll,* of Russell, argued the cause, and *H. D. Oelschlaeger,* of Plainville, and *Jerry E. Driscoll,* of Russell, were with him on the briefs for appellant.

*Stanley Krysl,* of Stockton, argued the cause, and *D. A. Hindman* and *Robert Osborn,* of Stockton, and *Henry F. Herrman* and *Gregory J. Herrman,* of Hays, were with him on the briefs for appellees.

The opinion of the court was delivered by

FATZER, J.: This action was commenced on May 15, 1959, to foreclose a mechanic's lien and to establish and foreclose an equitable mortgage. The pertinent facts are summarized.

On September 18, 1957, the plaintiff lumber company entered into a written contract with W. H. Bedore and Georgine Bedore, his wife, Raymond Bedore and W. H. Bedore, a partnership d. b. a. Bedore Brothers, building contractors, hereafter referred to as the Bedores, whereby the parties agreed that the plaintiff would purchase Lot 15, Block "C," Meredith-Ruff Addition to the City of Plainville, for the sum of $750 and place fee title thereto in the names of W. H. Bedore and Georgine Bedore, and that the Bedores would build a new house thereon, purchasing all building materials from the plaintiff. It was agreed that the Bedores would repay the $750 out of the first disbursal under a construction loan to be obtained on the property. The lot was purchased and the house was completed in mid-January, 1958. A similar arrangement was made between the parties with respect to Lots 12, 13, 14 and 16 in the Meredith-Ruff Addition, and before, during and after the time the house was being built on Lot 15, houses on the other lots were built or were being constructed. On September 19, 1957, the Bedores executed and delivered their real estate mortgage on Lot 15 to the Hays Building and Loan Association in the sum of $6,500. The mortgage was a construction loan and advances were to be made from time to time to pay for the materials as the building progressed. The plaintiff knew the mortgage was executed and duly recorded since it forwarded the mortgage to Stockton for recording on September 24, 1957.

On January 21, 1958, the Bedores sold the completed house on Lot 15 to Curtis Armbrister and Karen Armbrister, his wife, for the sum of $8,749 under a written contract, and they took possession on January 25, 1958. Sometime after the commencement of the action, the Bedores executed and delivered to the Armbristers their general warranty deed dated March 25, 1960, which was recorded on March 31, 1960.

On January 30, 1958, the loan association effected a final settlement with the Bedores and delivered its check for $3,880.67, payable to the Bedores and the plaintiff, which represented the balance

due under the loan. The Bedores endorsed the check and delivered it to the plaintiff without instructions as to the application of the proceeds on their various accounts with the plaintiff, and the plaintiff, instead of applying the full amount of $3,880.67 to the account for Lot 15, applied $594.68 to pay the account on Lot 12 and $1,951.40 to pay the account on Lot 14, and applied the balance of $1,334.59 to the account of Lot 15 leaving an unpaid balance of $3,568.70.

On May 19, 1958, the plaintiff filed notice of its mechanic's lien in the office of the clerk of the district court against Lot 15 in the amount of $3,568.70 supported by its itemized account of materials sold to the Bedores for the construction of the dwelling thereon.

The case was tried to the court on the plaintiff's amended petition to which the Bedores filed their verified answer denying generally the allegations of the amended petition, and alleged that the plaintiff did not furnish or deliver the items noted in the verified account, tickets Nos. 06563 and 08410 allegedly delivered on January 22, 1958, and on May 7, 1958, respectively, and further, that if the plaintiff sold and delivered the items in the two accounts, the same were not expended or used in the construction of the house on Lot 15.

The loan association answered the plaintiff's amended petition denying generally its allegations and also filed its cross-petition alleging the execution of the mortgage by the Bedores and its recordation; that the mortgage was executed prior to the commencement of the construction of the house on Lot 15 and was a first and prior lien on the property. The prayer was that if the property be ordered sold, its lien be declared a first and prior lien and it have and recover the amount due on the mortgage.

The Armbristers filed an answer denying all of the allegations in plaintiff's amended petition, and specifically denied that any materials were furnished for Lot 15 subsequent to January 15, 1959. Their cross-petition alleged they purchased the property under contract on January 21, 1958; that they were the legal owners and had been in possession of the property since that time; that they were not served with legal process for more than one year after the filing of the lien and as to them, it was barred by the statute of limitations; that the plaintiff knew of their purchase of the property on January 21, 1958; that they assumed and agreed to pay the mortgage to the loan association, and that any claim of plaintiff was inferior to their title. The prayer was that plaintiff take nothing and that their title be quieted against plaintiff's lien.

The plaintiff filed verified replies to the answers of the Bedores, the Armbristers and the loan association, and verified answers to the cross-petitions of the Armbristers and the loan association.

At the commencement of the trial the court sustained the plaintiff's motion for judgment on the pleadings against the Armbristers and the loan association upon the ground that the answers of those defendants were not verified and did not deny the correctness of plaintiff's verified account as alleged in its amended petition.

The case proceeded to trial on the issues joined by the amended petition and the verified answer of the Bedores. During the trial counsel stipulated that the materials shown on the itemized statement attached to the mechanic's lien were furnished and used in the construction of the dwelling on Lot 15, except tickets Nos. 06417, 06563 and 08410 all dated subsequent to January 14, 1958.

All of the parties were called as witnesses and testified, and at the close of all the evidence the court announced it would take the matter under advisement and requested the parties to file briefs. Thereafter, on December 24, 1961, the court filed its memorandum opinion containing findings of fact and conclusions of law. It found that the items covered by the disputed tickets were for a gallon of paint, some quarter round, aluminum threshold, a pull chain receptacle, and plywood sheathing, and made a general finding in favor of the defendants, that "no material furnished by the plaintiff was used on this house after January 15, 1958." The court concluded as a matter of law that it should not reverse its ruling in awarding judgment on the pleadings as to the defendants loan association and the Armbristers, but that "the principal defendants, Bedores, represented all parties, and any legal relief granted to them would apply to all parties." Further, that plaintiff's mechanic's lien filed on May 19, 1958, was not filed within four months after the date upon which material was last furnished and plaintiff had no lien upon Lot 15, and any right to an equitable mortgage, "was waived by plaintiff, if any ever existed, by plaintiff's non assertion of any such right to Armbristers and the application of funds from the mortgage to other buildings."

The plaintiff argues many legal questions all of which are hinged upon the validity of its mechanic's lien and that under the evidence it should be presumed that materials furnished were actually used in the construction of the house on Lot 15, and cites and relies upon *Rice & Floyd v. Hodge Bros.*, 26 Kan. 164; *Surety Co. v. Lime*

*Co.,* 76 Kan. 914, 92 Pac. 1111, and *David v. Doughty,* 96 Kan. 556, 152 Pac. 660.

It is unnecessary to discuss or distinguish those cases since under the facts and circumstances presented they are inapplicable. Nor do we propose to review at length the evidence upon which the district court found that no material furnished by the plaintiff was used in the construction of the dwelling on Lot 15 after January 15, 1958. There was evidence that Bedore started finishing the inside of the house during December of 1957; that the floors were finished after everything else was completed; that he began finishing the floors about the 4th or 5th of January and that it took about two days to varnish them; that ticket No. 06417, dated January 14, 1958, was for quarter round and plywood sheathing and he did not use any ¾-inch quarter round inside the house, and there was no use for sheathing after the house was completed; that ticket No. 06563, dated January 22, 1958, was for an aluminum threshold and a pull chain receptacle; that floors are never finished without the threshold, and he could not remember putting the receptacle in after the floors were finished; that ticket No. 08410, dated May 7, 1958, was for one gallon of house paint, and that plaintiff's manager had approached W. H. Bedore and his wife and suggested that they buy a gallon of paint in order to validate plaintiff's lien, and if the paint was purchased, it was never used on the house. Other testimony amply supported the district court's finding that no material furnished by the plaintiff was used on the dwelling after January 15, 1958.

The plaintiff argues that it is entitled to judgment against the loan association and the Armbristers since the answers of those defendants were not verified which, in effect, left the mechanic's lien, verified account, and contract admitted and not open to any defense pleaded in the answers. While the loan association and the Armbristers did not cross-appeal from the order of the district court sustaining the plaintiff's motion for judgment on the pleadings, nonetheless we point out that when the answers and cross-petition of those defendants were filed, plaintiff did not challenge the sufficiency either by demurrer or motion, but pleaded over by filing a reply denying the new matter and renewing the prayer of its petition. By pleading over plaintiff waived lack of verification. (*Brandtjen & Kluge, Inc., v. Lucas,* 153 Kan. 138, 143, 109 Pac. 197; *Tuggle v. Johnson,* 190 Kan. 386, 375 P. 2d 622.) Although the district court, in its memorandum opinion, refused to reverse its

ruling rendering judgment for the plaintiff, the effect of that ruling was abrogated by its subsequent ruling that the loan association and the Armbristers were protected by the verified answer of the Bedores. The ultimate result, therefore, was the same as though the district court had overruled the plaintiff's motion for judgment on the pleadings. It is a well established principle, requiring the citation of no authority, that if the decision of the district court is correct, its reasons for arriving at the decision are unimportant, and we are convinced the district court entered a correct judgment denying the enforcement of the plaintiff's mechanic's lien and the purported equitable mortgage.

A money judgment was not sought against the defendants loan asociation and the Armbristers, and it is obvious the plaintiff could have no enforceable claim against them when it had no lien on the property. Moreover, when the Bedores executed the mortgage on Lot 15 in favor of the loan association, the mortgage warranted title; likewise, when they executed the warranty deed to the Armbristers in March of 1960, the deed warranted title, and it was incumbent upon the Bedores, in addition to being the principal defendants in the action, to come in and defend the title. (*Samson v. Zimmerman,* 73 Kan. 654, 85 Pac. 757; 14 Am. Jur., Covenants, Conditions and Restrictions, § 65, p. 531.) Here the Bedores, being parties to the action, appeared in the trial and defended the title which they had warranted to the defendants loan association and the Armbristers. They knew all the facts with respect to the purchase and use of materials which went into the house and offered testimony as to the accuracy of the items constituting the mechanic's lien, and the facts concerning the alleged equitable mortgage. The district court heard the testimony and the case was decided on an issue of fact against the contentions of the plaintiff.

One point deserves attention. The principal amount loaned for the construction of the dwelling on Lot 15 was $6,500. The plaintiff was paid by the loan association's checks for the various houses built by the Bedores. Simple arithmetic shows that someone received $2,619.33 prior to the final disbursement of $3,880.67 which was made January 30, 1958. The plaintiff's own agreement with the Bedores was that it was to recover the cost of the lot out of the first payment under the construction loan. The district court did not err in its conclusion that the plaintiff waived its right, if any ever existed, to the establishment and foreclosure of an equitable mortgage.

The record has been carefully examined and we are of the opinion that the district court did not err in rendering a personal judgment against the defendants W. H. Bedore and Georgine Bedore for the sum of $3,568.70 with interest; in adjudging that the Hays Building and Loan Association had a first and prior lien pursuant to the terms of its mortgage of record less payments made by the Armbristers, and in decreeing that the title of the defendants Armbristers be quieted as to the plaintiff.

The judgment is affirmed.